UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH RANDOLPH MAYS,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS and OFFICE OF INFORMATION POLICY, UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendants. | No. 1:20-CV-02197-CKK |

DECLARATION OF KELLY FORBES

I, Kelly Forbes, do hereby declare and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP") as a Paralegal for Consolidated Legal Center located at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"). I have been a Paralegal Specialist with the Legal Department at FCC Butner since October 2019, and have been employed by the BOP since January 2000.

2. I am familiar with the Complaint filed by the above-captioned plaintiff, Joseph Mays, Federal Register Number 43487-007, seeking disclosure of the records he sought through a Freedom of Information Act ("FOIA") request to the BOP.

3. I was not involved in the processing of, or response to, the FOIA requests at issue in the present case. The requests at issue were processed by another paralegal who is no longer with the agency. My declaration is based upon information contained within the BOP's official database, FOIAXpress, which tracks all FOIA requests received by the BOP.

4. Inmate Mays is currently in service of 45-year sentence as a result of a conviction for

1

murder in the District of Columbia. A true and correct copy of the Public Information Inmate Data, dated March 15, 2021, for inmate Mays, is attached as Exhibit A to this declaration.

5. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. Due to the nature of my official duties as a Paralegal Specialist for FCC Butner, I am familiar with the procedures followed by the Central Office and the Mid-Atlantic Regional Office ("MARO") of the BOP in responding to requests made pursuant to FOIA. Requests for BOP records are governed by the Department of Justice's FOIA regulations, *see* 28 C.F.R. Part 16, the BOP's FOIA regulations, *see* 28 C.F.R. Part 513, and BOP Program Statement 1351.05, <u>Release of Information</u>.

6. Under 28 C.F.R. § 513.60, FOIA requests must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street N.W., Washington, D.C. 20534. Because inmate records are exempt from disclosure under the Privacy Act, inmate requests for records under the Privacy Act are processed as FOIA requests. 28 C.F.R. § 513.50. All FOIA requests are received by the FOIA/Privacy Act Section of the Office of General Counsel in Central Office.

7. A Central Office FOIA Technician will review the request to determine the likely location of the records sought. If the records are likely to be located in Central Office, the request will be assigned to Central Office FOIA processors. However, if the records are likely to be located in a regional office or at an institution, such as records regarding an individual inmate, the Central Office FOIA Technician will scan the request into a PDF format and e-mail it to FOIA staff located in the appropriate regional office. *See* 28

C.F.R. § 513.64(a).  In 2017, the relevant time period during which the Plaintiff submitted the FOIA requests at issue in this case, the process for handling FOIA requests in the Mid-Atlantic Region was slightly different than the current process.  At that time, within the Mid-Atlantic Region, MARO FOIA staff would log the new FOIA requests e-mailed by the Central Office FOIA Technician into the BOP's FOIA database and assign the request a FOIA number.  MARO FOIA staff would then send a notification letter to the requester advising him that the request was received by the BOP and informing him of the number it has been assigned.  *See* 28 C.F.R. § 513.64(b).

8. The FOIA processor assigned the FOIA request would review the request to determine where the records requested are likely to be located, and, if appropriate, would then assign a search for responsive records at the appropriate location(s).  The FOIA processor then processed the request by releasing all non-exempt information and withholding exempt information by applying applicable FOIA exemptions.

9. Once the FOIA request is processed, the requester is advised in writing of any denial of information, whether in part or in whole, and the reasons for the denial.  The requester is also advised that he may appeal the denial of information to the Office of Information and Policy ("OIP").

10. In his Complaint, inmate Mays challenges the BOP's purported failure to properly respond to FOIA Request Nos. 2017-02957, 2017-04802, and 2017-07249.

**FOIA Request No. 2017-02957**

11. On February 17, 2017, the FOIA/PA Section with BOP's Central Office received a FOIA request from Joseph R. Mays, Register Number 43487-007, seeking copies of various records, including:

a. Form 409 (Request for Transfer/Application of Management Variable);
b. UNICOR Maintenance Activity Log (2016);
c. UNICOR/FPI Form 44 – Yearly Chronological FPI Work Performance Evaluation Form (October 2012 – August 11, 2016); and,
d. UNICOR/FPI Form 96 – Inmate Industrial Employment Action (October 2012 – August 11, 2016).

A true and correct copy of FOIA Request No. 2017-02957 is attached as Exhibit B to this declaration.

12. This request was assigned to MARO for processing, and the MARO FOIA processor assigned it FOIA Request No. 2017-02957 and placed it into the MARO's queue for processing.

13. In a response dated March 9, 2017, inmate Mays was provided copies of three (3) pages of documents which were determined to be responsive to his request. A true and correct copy of the release determination letter and responsive documents issued to inmate Mays on March 9, 2017; are attached as Exhibit C to this declaration. Portions of the released documents were withheld, in part, pursuant to proper FOIA exemptions.

14. In a letter received by the Office of Information Policy ("OIP") on May 12, 2017, inmate Mays appealed the BOP's response to FOIA Request No. 2017-02957. Inmate Mays contended that the documents provider were not fully responsive to his request, and contended there should be additional responsive documents. A true and correct copy of the letter to OIP is attached as Exhibit D to this declaration.

15. In a letter dated May 18, 2017, inmate Mays was notified that his administrative appeal from the action of the BOP regarding FOIA Request No. 2017-02957 had been received by the OIP on May 12, 2017. The appeal was assigned the number DOJ-AP-2017-004187. A true and correct copy of the letter from OIP to inmate Mays is attached as Exhibit E to this declaration.

16. In a letter dated August 9, 2017, inmate Mays was notified that his appeal, number DOJ-AP-2017-004187, of the BOP's response to FOIA Request No. 2017-02957 was being remanded to the BOP for further review and processing of records located subsequent to his appeal. A true and correct copy of the letter from OIP to inmate Mays is attached as Exhibit F to this declaration.

17. In a letter dated August 9, 2017, the BOP's FOIA/PA Section received the Administrative Appeal Remand Memorandum containing instructions for processing the appeal following remand of FOIA Request No. 2017-02957. The memorandum directed the BOP to reopen the file and to "process the responsive records located subsequent to the appeal and produce all releasable records directly to the requester." A true and correct copy of the letter from OIP to the BOP FOIA/PA Section is attached as Exhibit G to this declaration.

18. In a response dated August 3, 2017, inmate Mays was provided with a supplemental response to FOIA Request No. 2017-02957. The supplemental response consisted of eleven (11) pages of responsive documents, which were released to inmate Mays in full. A true and correct copy of the release determination letter and responsive documents issued to inmate Mays on August 3, 2017; are attached as Exhibit H to this declaration.

**Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)**

19. The three (3) pages originally provided to inmate Mays in the March 9, 2017 response to FOIA Request No. 2017-02957 were withheld in part based upon FOIA Exemption 5 U.S.C. § 552(b)(6).

20. Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 6 was applied to withhold, in part, pages one (1) and two (2) of the initial three pages provided.

21. Exemption 6 was applied to withhold, in part, the name of the staff members who signed the Request for Transfer/Application of Management Variable (dated September 28, 2016), located at pages 1 and 2, of the initial documents provided to inmate Mays in the March 9, 2017 response.  The third-party staff members have a privacy interest in their personal information and identity.  Every effort was made to release all segregable information.

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)**

22. Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

23. When determining whether redacting or withholding records under Exemption 7(C) is proper, staff weigh the privacy interests at stake against the public interest in disclosure of the information.  To overcome a legitimate privacy interest, a requestor must:  (1) demonstrate the public interest is a significant one and more than having the information for its own sake; and, (2) show the information is likely to advance that interest.  Exemption 7(C)'s privacy protections extend to all individuals' personally identifiable information that appears in law enforcement records.

24. Exemption 7(C) protects the privacy interests of all individuals mentioned in law enforcement records, including—but not limited to—investigators, suspects, witnesses, and bystanders.  Exemption 7(C) authorizes the withholding of the photographs, names, and addresses of private individuals appearing in files unless release is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.

25. In order for the release of records to serve a public interest, the information must shed light on an agency's performance of its statutory duties. Names, likenesses, and other identifying information of most individuals rarely contribute to this public interest or knowledge of how an agency operates. If release of the records serve the public interest, a requester must also demonstrate the public interest is both significant and compelling enough to overcome legitimate privacy interests. If illegal or improper activities are alleged, a requester must produce meaningful evidence—more than a bare suspicion—that would cause a reasonable person to believe the government had engaged in impropriety.

26. Exemption 7(C) was applied to withhold in part portions of pages 1 and 2, for the same privacy reasons identified in paragraphs 19-21, *supra*. Specifically, the information withheld consists of the names of third-party staff members. Release of this information would constitute an unwarranted invasion of the personal privacy of third-parties. The BOP determined that there was no public interest in the release of the requested information that would shed light on the agency's performance of its statutory duties, or on the operations and activities of the government, nor any interest which would counterbalance the individuals' privacy in the information withheld under Exemption 7(C).

27. Inmate Mays does not address any potential public interest at stake, and seeks the records to challenge the loss of his inmate job and transfer to a different institution. This is a personal interest insufficient to establish a public interest, and inmate Mays fails to provide any justification for invading the privacy interests of the staff who signed the released forms.

28. The segregability analysis applied in Paragraph 21, *supra*, addressing the withholding of information pursuant to Exemption 6, was also applied regarding information withheld pursuant to Exemption 7(C).

## FOIA Request No. 2017-04802

29. On May 12, 2017, the FOIA/PA Section with BOP's Central Office received a FOIA request from Joseph R. Mays, Register Number 43487-007, seeking copies of various records, including:

    a. SIS Investigative Report for an incident alleged to have occurred on August 11, 2016, at the Federal Correctional Institution I in Butner, North Carolina ("FCI Butner I");
    b. Copy of the "flyer(s)", including "Names of the Federal Bureau of Prisons Institutions that these 'flyers' were found/distributed to, including the dates, times, quantity of, and names of the staff member(s) who found them [flyers] and alerted the FBOP and/or UNICOR, specifically UNICOR Factory Manager Jamie Hoskins and Associate Warden S. Ma'at, to them [flyers].";
    c. Copies of the communications from all staff members listed above;
    d. Copy of the information on how, when, and where these "flyers" were created and who created them;
    e. Copy of the names of [Mays'] "contact" people;
    f. The date the "flyers" were put into circulation;
    g. A copy of the listing of all logged access to [Mays'] UNICOR computer access account; and,
    h. The date that [Mays'] UNICOR computer access account was closed.

    A true and correct copy of FOIA Request No. 2017-04802 is attached as Exhibit I to this declaration.

30. This request was assigned to MARO for processing, and the MARO FOIA processor assigned it FOIA Request No. 2017-04802 and placed it into the MARO's queue for processing.

31. In a response dated May 23, 2017, inmate Mays was provided copies of 3 pages of documents which were determined to be responsive to his request. A true and correct

copy of the release determination letter and responsive documents issued to inmate Mays on March 9, 2017; are attached as Exhibit J to this declaration.  Portions of the released documents were withheld, in part, pursuant to proper FOIA exemptions.

**Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)**

32. As stated previously, Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 was applied to withhold, in part, portions of all three (3) pages released to inmate Mays in response to FOIA Request No. 2017-04802.

33. Exemption 6 was applied to withhold, in part, the names of the staff members who conducted an investigation into an incident that occurred on August 11, 2016, wherein inmate Mays confronted a staff member at "mainline" regarding concerns Mays had. Additionally, Exemption 6 was applied to withhold, in part, the names and information provided by a staff member, detailing information obtained from inmate Mays during an interview regarding the confrontation.  These third-parties have a privacy interest in their personal information, as well as their identity.  Release of the information contained in pages 1-3 would reveal personal information about third-parties, which in turn could jeopardize their safety due to harassment and/or retaliation, which would also compromise the safety of the institution.  Every effort was made to release all segregable information.

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)**

34. As stated previously, Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

9

U.S.C. § 552(b)(7)(C). Exemption 7(C) was applied to withhold, in part, portions of all three (3) pages released to inmate Mays in response to FOIA Request No. 2017-04802.

35. Exemption 7(C) was applied to withhold in part portions of pages 1 and 2 of 3, for the same privacy reasons identified in paragraphs 32-33, *supra*. Specifically, the information withheld consists of the names of third-party staff members. Release of this information would constitute an unwarranted invasion of the personal privacy of third-parties. The BOP determined that there was no public interest in the release of the requested information that would shed light on the agency's performance of its statutory duties, or on the operations and activities of the government, nor any interest which would counterbalance the individuals' privacy in the information withheld under Exemption 7(C).

36. The segregability analysis applied in Paragraph 33, *supra*, addressing the withholding of information pursuant to Exemption 6, was also applied regarding information withheld pursuant to Exemption 7(C).

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)**

37. Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the life or physical safety of any individual. See 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) was applied to withhold, in part, portions of all three (3) pages released to inmate Mays in response to FOIA Request No. 2017-04802.

38. BOP and other law enforcement agencies routinely use Exemption (b)(7)(F) to protect the names and identifying information of law enforcement employees such as special agents, law enforcement officers, government employees, and local law enforcement officers. Courts have held Exemption 7(F) protects BOP employees, and other law enforcement

personnel, from having their names and identifying information released to avoid unnecessary exposure to physical attacks, threats, manipulation, or harassment. Because the phrase "any individual" is broad, Exemption (7)(F) protection has also been extended to protect the names and identifying information of inmates, undercover agents, and medical personnel.

39. Revealing the identities of third-party staff members and information provided by or to them during the course of an investigation, could expose both the staff to threats, harassment, harm, and exposure to derogatory inferences all arising in connection with their mention in agency records.

40. Specifically, this exemption was applied to withhold documents contained in inmate Mays' Special Investigative Services ("SIS") File, which were compiled as part of inmate Mays' incarceration with the BOP pursuant to its law enforcement mission of protecting inmates, staff, and the community.

41. Exemption 7(F) was applied to withhold, in part, information obtained following an investigation into an incident that occurred on August 11, 2016, when inmate Mays confronted a staff member regarding concerns Mays had. The information withheld consisted of the results of a staff member's interview with inmate Mays, documents reviewed during the course of the investigation, conclusions drawn following the investigation into the incident, and recommendations made to ensure and promote the orderly running of both the institution, FCI Butner I, and the UNICOR operation at the institution. Revealing the identities of third-party individuals who conducted the investigation, as well as the information learned through the investigation and the conclusions drawn, could subject these individuals to retaliation, threats, harassment, or could result in a threat to their respective safety and to those BOP staff committed to their

protection pursuant to their law enforcement mandate. Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP

42. Exemption 7(F) was also applied to pages 1 through 3 to withhold inmate Mays' monitoring and classification within the BOP, as well as the information relied upon to make the monitoring and classification decisions. The BOP uses monitoring and classification information to manage the inmate population. Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public that these monitoring techniques are designed to protect. Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.

**FOIA Request No. 2017-07249**

43. In a letter received by the Office of Information Policy ("OIP") on June 14, 2017, inmate Mays appealed the BOP's response to FOIA Request No. 2017-04802. Inmate Mays contended that the documents provider were not fully responsive to his request, and contended there should be additional responsive documents. A true and correct copy of the letter to OIP is attached as Exhibit K to this declaration.

44. In a letter dated June 20, 2017, inmate Mays was notified that his administrative appeal from the action of the BOP regarding FOIA Request No. 2017-04802 had been received by the OIP on June 14, 2017. The appeal was assigned the number DOJ-AP-2017-004799. A true and correct copy of the letter from OIP to inmate Mays is attached as Exhibit L to this declaration.

45. In a letter dated September 26, 2017, inmate Mays was notified that his appeal, number DOJ-AP-2017-004799, of the BOP's response to FOIA Request No. 2017-04802 was being remanded to the BOP for further processing of the responsive records and for a further search for additional records. A true and correct copy of the letter from OIP to inmate Mays is attached as Exhibit M to this declaration.

46. In a letter dated September 26, 2017, the BOP's FOIA/PA Section received the Administrative Appeal Remand Memorandum containing instructions for processing the appeal following remand of FOIA Request No. 2017-04802. The memorandum directed the BOP to reopen the file and to: 1) conduct an additional search for two records identified as attachments to the Incident Report, specifically "staff memos" and "flyer circulating"; and, 2) reconsider the withholdings to the Incident Report, particularly whether Exemption 5 might be properly applied, and whether there is any information that can be further segregated for release or if there is an overall reason why Exemption 7F is applicable to nearly the entirety of the report. A true and correct copy of the letter from OIP to the BOP FOIA/PA Section is attached as Exhibit N to this declaration.

47. This appeal was assigned to MARO for processing, and the MARO FOIA processor assigned it FOIA Request No. 2017-07249 and placed it into the MARO's queue for processing.

48. In a response dated October 31, 2017, inmate Mays was provided copies of ten (10) pages of documents which were determined to be responsive to his request. A true and correct copy of the release determination letter and responsive documents issued to inmate Mays on October 31, 2017; are attached as Exhibit O to this declaration. Portions of the released documents were withheld, in full or in part, pursuant to proper FOIA

exemptions. Five (5) pages were released in full, four (4) pages were released in part, and one (1) page was withheld in full.

49. In a letter received by the Office of Information Policy ("OIP") on December 20, 2017, inmate Mays appealed the BOP's response to FOIA Request No. 2017-07429 (supplemental response to FOIA Request No. 2017-04802, DOJ-AP-2017-004799). A true and correct copy of the letter to OIP is attached as Exhibit P to this declaration.

50. In a letter dated August 9, 2018, inmate Mays was notified that his appeal, assigned number DOJ-AP-2018-001767, of the BOP's response to FOIA Request No. 2017-07249 was affirmed, on partly modified grounds, and that he was being provided with additional portions of one page of the previously provided responsive documents. A true and correct copy of the letter from OIP to inmate Mays is attached as Exhibit Q to this declaration.

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(2)**

51. Exemption 2 protects record "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 ordinarily applies to types of materials that are internal agency matters that are routine or trivial, and would not be subject to a genuine or significant public interest. Exemption 2 was applied to withhold, in part, portions of page 2-3 of the documents released to inmate Mays in response to FOIA Request No. 2017-07249.

52. The information contained on page 2, withheld in part under Exemption 2, consists of the specific location where the investigating staff member conducted the interview of inmate Mays, regarding the August 11, 2016 incident. The information contained on page 3, withheld in part under Exemption 2, consists of a summary of records gathered during the investigation of the August 11, 2016, including statements made by staff members. The

withheld information related solely to the internal practice of the BOP regarding how and where inmate interviews are conducted, and the types of information considered during the course of an investigation. Every effort has been made to release all segregable information without disclosing the specific investigative information used by the BOP.

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(5)**

53. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). This language has been construed to exempt documents that are normally privileged in the civil discovery context. Of the litigation privileges generally available to BOP, the deliberative-process is applicable to the records responsive to inmate Mays' FOIA request.

54. The "inter-agency or intra-agency" threshold is met based on the scope of the request for records with regard to inmate Mays' request for the Special Investigative Service ("SIS") Investigative Report concerning the August 11, 2016 incident. Since such messages would be among individuals who are within the DOJ and BOP, this request meets the intra-agency threshold requirement on its face.

55. The deliberative process privilege is not necessarily linked to litigation or legal advice and is applied if the communication was 1) pre-decisional and 2) deliberative. Materials are pre-decisional if they are generated before the adoption of an agency decision. The document is deliberative in nature if it is a direct part of the deliberative process—that is, it makes recommendations or expresses opinions on legal or policy matters. The exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process.

56. Exemption (b)(5) was applied to withhold, in part, portions of page 3 of the documents released to inmate Mays in response to FOIA Request No. 2017-07249, specifically the conclusions drawn from, and recommendations made following, the investigation into the August 11, 2016 incident. Disclosure of this deliberative information could pose a risk to internal issues of safety and security, as it concerns the manner in which staff manage the orderly running of the institution and the institution's UNICOR operations. Every effort has been made to release all segregable information without disclosing the specific investigative information used by the BOP.

**Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)**

57. As stated previously, Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 was applied to withhold, in part or in full, portions of pages 1-3, and 9-10, of the documents released to inmate Mays in response to FOIA Request No. 2017-07249.

58. Exemption 6 was applied to withhold, in part, the names of the staff members who conducted an investigation into an incident that occurred on August 11, 2016, wherein inmate Mays confronted a staff member at "mainline" regarding concerns Mays had. Additionally, Exemption 6 was applied to withhold, in part, the names and information provided by staff members, detailing information obtained from inmate Mays during an interview regarding the confrontation. These third-parties have a privacy interest in their personal information, as well as their identity. Release of the information contained in pages 1-3 would reveal personal information about third-parties, which in turn could jeopardize their safety due to harassment and/or retaliation, which would also

16

compromise the safety of the institution. Every effort was made to release all segregable information.

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)**

59. As stated previously, Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) was applied to withhold, in part or in full, portions of pages 1-3, and 9-10, of the documents released to inmate Mays in response to FOIA Request No. 2017-07249.

60. Exemption 7(C) was applied to withhold in part portions of pages 1 and 2 of 3, for the same privacy reasons identified in paragraphs 57-58, *supra*. Specifically, the information withheld consists of the names of third-party staff members. Release of this information would constitute an unwarranted invasion of the personal privacy of third-parties. The BOP determined that there was no public interest in the release of the requested information that would shed light on the agency's performance of its statutory duties, or on the operations and activities of the government, nor any interest which would counterbalance the individuals' privacy in the information withheld under Exemption 7(C).

61. The segregability analysis applied in Paragraph 58, *supra*, addressing the withholding of information pursuant to Exemption 6, was also applied regarding information withheld pursuant to Exemption 7(C).

**Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)**

62. As stated previously, Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the

17

life or physical safety of any individual. See 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) was applied to withhold, in part or in full, portions of pages 1-3, and 9-10, of the documents released to inmate Mays in response to FOIA Request No. 2017-07249.

63. Specifically, this exemption was applied to withhold documents contained in inmate Mays' Special Investigative Services ("SIS") File, which were compiled as part of inmate Mays' incarceration with the BOP pursuant to its law enforcement mission of protecting inmates, staff, and the community.

64. Exemption 7(F) was applied to withhold, in part, information obtained following an investigation into an incident that occurred on August 11, 2016, when inmate Mays confronted a staff member regarding concerns Mays had. The information withheld consisted of the results of a staff member's interview with inmate Mays, documents reviewed during the course of the investigation, conclusions drawn following the investigation into the incident, and recommendations made to ensure and promote the orderly running of both the institution, FCI Butner I, and the UNICOR operation at the institution. Revealing the identities of third-party individuals who conducted the investigation, as well as the information learned through the investigation and the conclusions drawn, could subject these individuals to retaliation, threats, harassment, or could result in a threat to their respective safety and to those BOP staff committed to their protection pursuant to their law enforcement mandate. Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.

65. Exemption 7(F) was also applied to pages 1 through 3 to withhold inmate Mays' monitoring and classification within the BOP, as well as the information relied upon to make the monitoring and classification decisions. The BOP uses monitoring and

classification information to manage the inmate population. Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public that these monitoring techniques are designed to protect. Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.

66. I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 19th day of March, 2021.

*Kelly Forbes*
Kelly Forbes
Paralegal Specialist
Federal Correctional Complex
Butner, North Carolina